## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Edward Anthony Maye, ) | CASE NO. 1:21-CV-00530 |
|     Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| Pennsylvania Department of Corrections) | |
| *et al*., ) | |
|     Defendants ) | Magistrate Judge Schwab |
| ) | |
| ) | |
| ) | |
| ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiff, Edward Anthony Maye, by and through his attorney, Leonard Gryskewicz, Jr., hereby files this Response to Defendants' Statement of Material Facts pursuant to Local Rule 56.1 and avers as follows:

1. Admitted.

2. Admitted in part and denied in part. In addition to unit managers, shift commanders and security staff also have the authority to alter inmate housing assignments. Defendants' Statement of Material Facts ("Defendants' SUF"), Exhibit 6, 14:2–15:8; 27:1–28:3; Defendants' SUF, Exhibit 3, 25:23–26:5; Plaintiff's Response to Defendants' Statement of Material Facts ("Response SUF"), Appendix 11.

1

3. Admitted.

4. Admitted in part and denied in part. It is admitted that the bottom bunk and bottom tier medical restrictions require that an inmate live on the bottom bunk and bottom tier of a cell block. However, the purpose of these restrictions is to ensure an inmate does not have to use stairs; it is denied that placement on the bottom bunk and bottom tier of any block is appropriate. Plaintiff's Statement of Uncontested Material Facts (Doc. 34) ("Plaintiff's SUF"), ¶ 17.

5. Denied. Plaintiff's SUF, ¶ 8, 15–16, 18–20, 22.

6. Admitted in part and denied in part. It is admitted that correctional staff can check the DOCNET system and verify the inmate's housing restrictions with the medical department. It is denied that these are the only ways to check an inmate's medical status. For example, correctional staff can be alerted to a medical restriction by the inmate themselves, which could then trigger the correctional staff to verify the restriction with the medical department. Defendants' SUF, Exhibit 2, 15:4–16:1.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted in part and denied in part. It is admitted that a stair restriction may also exist at SCI Dallas for various reasons. However, it is denied that a same level shower restriction means that an inmate can use stairs or that it is appropriate for an inmate with a same level shower restriction to use stairs. Defendants SUF, Exhibit 2, 17:14–19; *see also* Response SUF, Appendix 12; Response SUF, Appendix 13, 10:1–9; Response SUF, Appendix 14, 13:1–8.

11. Admitted in part and denied. It is admitted that a same level shower restriction could permit an inmate to live on a cell block that did not have a same level shower if he could access the showers in the infirmary without using stairs. However, it is denied that being housed on a block that included stairs to access the infirmary, such as F Block where Maye was located, would be permitted for an inmate with a same level shower restriction since the inmate would still have to use stairs to access the showers in the infirmary. Any use of stairs to access a shower is impermissible with a same level shower pass. Defendants SUF, Exhibit 2, 17:14–19; *see also* Response SUF, Appendix 12; Response SUF, Appendix 13, 10:1–9; Response SUF, Appendix 14, 13:1–8.

12. Denied. Response SUF, Appendix 4 (confirming that Maye had a bottom and bottom tier restriction since September 10, 2018); Response

SUF, Appendix 10 (noting that Dr. Prince approved a same level shower pass for Maye on March 19, 2019 and that is why Maye was housed on J Block, with same level showers, at that time); Response SUF, Appendix 11 (noting that the "medical department staff gave you bottom bunk, bottom tier and same level showers, and this is ***documented in your electronic health record***") (emphasis added); Plaintiff's SUF, Appendices 9, 12–13, 15. The medical department at SCI Dallas acknowledged that Maye had his medical restrictions, including his same level shower pass, because of "his inability to go up and down stairs." Response SUF, Appendix 12 (noting that Maye's medical restrictions and same level shower restriction were issued because of his inability to go up and down stairs); Plaintiff's SUF, Appendix 13 (noting on March 19, 2019 that Maye has trouble with stairs, has bottom bunk and bottom tier status, and Dr. Prince renewed Maye's same level shower pass with the specific instruction to "Shower on ground level on J-Block"); Plaintiff's SUF, Appendix 11, 16:7–18:19. Leah Martin, a member of the medical department at SCI Dallas, confirmed that Maye's same level shower restriction, as well as his other restrictions, were in his medical records and that the person responsible for moving Maye from J Block to F Block would have been aware of these restrictions. Plaintiff's SUF, Appendix 11, 18:8–19:15.

13. Admitted in part and denied in part. It is admitted that Marsico stated he was told Maye was behaving inappropriately with Counselor Zoltewicz. It is denied that Maye was actually behaving inappropriately with Counselor Zoltewicz. Plaintiff's SUF, Appendix 10, 69:3–70:13.

14. Admitted in part and denied in part. It is admitted that Marsico, the unit manager of J Block, contacted Josefowicz, the unit manager of F Block, inquiring as to whether F Block had any open beds with a bottom bunk available that were bottom tier. It is denied that any cell on F Block would have complied with Maye's medical restrictions since F Block required an inmate to use stairs to enter and exit the block to use any facilities at SCI Dallas, including, but not limited to, the infirmary, and F Block did not have a same level shower. Plaintiff's SUF, ¶¶ 4–8, 13–22.

15. Denied. Maye's own testimony is competent evidence to show that Marsico had a personal vendetta against Maye and attempted to remove him from J Block because of that animus. Plaintiff's SUF, Appendix 10. Additionally, the lack of any misconduct for Maye allegedly harassing Counselor Zoltewicz also demonstrates that Marsico's story for why he wanted to move Maye from J Block was false. Plaintiff's SUF, Appendix 10, 69:3–70:13.

16. Admitted.

17. Admitted.

18. Denied. Response SUF, Appendix 10 (noting that Dr. Prince approved a same level shower pass for Maye on March 19, 2019 and that is why Maye was housed on J Block, with same level showers, at that time); Response SUF, Appendix 11 (noting that the "medical department staff gave you bottom bunk, bottom tier and same level showers, and this is ***documented in your electronic health record***") (emphasis added); Plaintiff's SUF, Appendices 9, 12–13, 15. The medical department at SCI Dallas acknowledged that Maye had his medical restrictions, including his same level shower pass, because of "his inability to go up and down stairs." Response SUF, Appendix 12 (noting that Maye's medical restrictions and same level shower restriction were issued because of his inability to go up and down stairs); Plaintiff's SUF, Appendix 13 (noting on March 19, 2019 that Maye has trouble with stairs, has bottom bunk and bottom tier status, and Dr. Prince renewed Maye's same level shower pass with the specific instruction to "Shower on ground level on J-Block"); Plaintiff's SUF, Appendix 11, 16:7–18:19. Leah Martin, a member of the medical department at SCI Dallas, confirmed that Maye's same level shower restriction, as well as his other restrictions, were in his medical records and that the person

responsible for moving Maye from J Block to F Block would have been aware of these restrictions. Plaintiff's SUF, Appendix 11, 18:8–19:15.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted in part and denied in part. It is admitted that the showers on F Block are located below the bottom tier and are accessible only via stairs. It is admitted that Maye was placed on the bottom tier of F Block. It is admitted that Maye was assigned a bottom bunk in the computer system at SCI Dallas. It is denied that Maye was actually given a bottom bunk since his cellmate refused to vacate the bottom bunk and Defendants refused to remove his cellmate from the bottom bunk. Plaintiff's SUF, Appendix 10, 13:2–16:14; 35:13–47:12; 48:1–50:11; 52:1–53:25; 55:18–56:5; Defendants SUF, Exhibit 6, 24:1–33:20; Defendants SUF, Exhibit 9, Interrogatory 8–10.

23. Admitted.

24. Admitted.

25. Admitted.

26. Denied. Response SUF, Appendix 10 (noting that Dr. Prince approved a same level shower pass for Maye on March 19, 2019); Response SUF, Appendix 11 (noting that the "medical department staff gave you bottom

bunk, bottom tier and same level showers, and this is ***documented in your electronic health record***") (emphasis added); Plaintiff's SUF, Appendices 9, 12–13, 15; Plaintiff's SUF, Appendix 11, 18:8–19:15.

27. Admitted in part and denied in part. It is admitted that Starck stated she spoke with Lynch and Linkowicz. It is denied that this discussion led to Maye's cellmate being removed from the bottom bunk.

28. Admitted.

29. Admitted.

30. Admitted.

31. Denied. Although Meyer alleged this during his deposition, Starck specifically denied that she resolved any issues related to Maye being denied a bottom bunk. Defendants SUF, Exhibit 6, 22:19–24:2. Starck specifically said she did not deliver the orders Meyer allegedly gave to her to resolve the situation with Maye being denied a bottom bunk. *Id.*

32. Admitted.

33. Denied. Although Meyer alleged this during his deposition, Starck specifically denied that she resolved any issues related to Maye being denied a bottom bunk. Defendants SUF, Exhibit 6, 22:19–24:2. Starck specifically said she did not deliver the orders Meyer allegedly gave to her to resolve the situation with Maye being denied a bottom bunk. *Id.*

34. Denied. The cited portion of Exhibit 3 to Defendants SUF does not support this assertion. Josefowicz did testify that Amaral stopped him on an unknown day, asked about Maye's housing assignment, Josefowicz told Amaral that Maye was on F Block Cell 2 Bed 1, Amaral did not tell Josefowicz why he asked for this information, and Josefowicz had no idea why Amaral asked for this basic information about Maye. Defendants SUF, Exhibit 3, 22:2–23:13. This testimony did not confirm any of Maye's medical restrictions and Josefowicz did not understand this request as confirming any of Maye's medical restrictions.

35. Admitted in part and denied in part. It is admitted that Josefowicz testified that Beers contacted him on an unknown date, asked what Maye's housing status was, Josefowicz told him that Maye was "in Cell 22, Bed 1, because he's bottom bunk, bottom tier", and nothing else was stated between the parties. Defendants' SUF, Exhibit 3, 23:14–24:12. There was no follow up conversation between Beers and Josefowicz. *Id.* However, Beers did not remember anything regarding Maye or the allegations in this case. Response SUF, Appendix 15, Interrogatories 6, 9, 10, 13, 14. It is denied that Beers did anything to remedy the issues Maye had brought to his attention. The remainder of this averment is denied.

36. Admitted in part and denied in part. It is admitted that Maye saw Linkowicz to check his medical restriction status as part of his grievance. It is denied that Linkowicz did anything to remedy Maye's situation after being informed of his medical restrictions. Linkowicz would have been informed of Maye's bottom bunk, bottom tier, and same level shower restrictions. Response SUF, Appendix 10 (noting that Dr. Prince approved a same level shower pass for Maye on March 19, 2019); Response SUF, Appendix 11 (noting that the "medical department staff gave you bottom bunk, bottom tier and same level showers, and this is *documented in your electronic health record*") (emphasis added); Plaintiff's SUF, Appendices 9, 12–13, 15; Plaintiff's SUF, Appendix 11, 18:8–19:15.

37. Admitted in part and denied in part. It is admitted that Starck asserted she spoke with Lynch and "I confirmed with Officer Lynch that – that everyone I spoke to confirms [Maye] is placed accurately." Defendants SUF, Exhibit 5, 25:2–16. Lynch responded that Maye was continuously complaining he should not be on F Block. Defendants SUF, Exhibit 5, 25:2–16. Starck also should have realized Maye should not have been placed on F Block given his medical restrictions and therefore, her confirmation that Maye was accurately housed was incorrect. Response SUF, Appendix 10 (noting that Dr. Prince approved a same level shower pass for Maye on

March 19, 2019); Response SUF, Appendix 11 (noting that the "medical department staff gave you bottom bunk, bottom tier and same level showers, and this is **_documented in your electronic health record_**") (emphasis added); Plaintiff's SUF, Appendices 9, 12–13, 15; Plaintiff's SUF, Appendix 11, 18:8–19:15.

38. Admitted.

39. Admitted.

40. Admitted in part and denied in part. It is admitted after Maye returned from the hospital, he was placed back on F Block in a different cell and was given a bottom bunk. It is denied that Maye was "still in the bottom bunk" since he was denied a bottom bunk previously as described *supra*.

41. Admitted. By way of further response, Maye was leaving F Block down the stair case that was his only way in and out of F Block.

42. Admitted.

43. Admitted.

44. Denied. In grievance 798006, Maye asserted that he was improperly moved to F Block based upon his medical restrictions and complained that Nurse Paul informed him he did not have a same level shower restriction. Defendants SUF, Exhibit 11. In response to this grievance, medical acknowledged that Maye "had approval for same level shower", and "[o]n

11

3/19/19, Dr. Prince wrote in his note that J block same level showers were approved. According to Dr. Prince, a pass was issued during your encounter." Response SUF, Appendix 10. Therefore, medical confirmed that Maye had the restrictions Defendants were denying in his other grievances and this grievance is relevant. Plaintiff submitted grievance 803811 after his fall on F Block in May 2019. Defendants SUF, Exhibit 12. In this grievance, Plaintiff specifically asserted "I should of never been moved to a block with stairs in the first place. My Medical restrictions same level shower clearly makes it unable for me to walk [sic] and down stairs without risk of injury." *Id.* In response to the grievance, the medical department blamed the Defendants in this action. Response SUF, Appendix 11. The response specifically stated "[a]s explained in grievances 797347 and 798006 medical department staff gave you bottom bunk, bottom tier and same level showers, ***and this is documented in your electronic health record***." *Id.* (emphasis added). Grievance 803811 was specifically directed at Maye's fall in May 2019 and specifically asserted, again, that he should never have been moved or housed on F Block at all. SCI Dallas personnel specifically acknowledged that grievance 803811 was related to the other grievances Maye filed regarding his situation. Response SUF, Appendix 11. Therefore, this grievance is relevant as well.

45. Admitted.

46. Denied. In grievance 795772, Plaintiff specifically wrote as follows: (1) "Informed CO1 Link[1] and Lynch upon arrival"; (2) "Spoke w [sic] Lt Amaral and Lt Stark morning officer called unt mgr [sic] which 'I'm not moving him' was Unt Mgr [sic] response per officer"; and (3) "Also spoke w [sic] Captain Myer and Starzynki". Defendants SUF, Exhibit 13. It is further noted that this grievance had "Housing/cell Josefowicz" written on it, which demonstrates the prison was aware Josefowicz was part of the problem. Defendants SUF, Exhibit 13. Josefowicz also wrote the response to this grievance. Response SUF, Appendix 2. In response, Josefowicz specifically stated that he spoke with Lynch, Amaral, and Beers regarding the incidents alleged in the grievance. *Id.* Additionally, the remanded response to grievance 795772 stated that Amaral and Beers were interviewed and therefore, "all staff members involved, and listed within your grievance and appeal, have been interviewed." Response SUF, Appendix 3. Therefore, this grievance specifically named, at a minimum, Josefowicz, Linkowicz, Lynch, Amaral, Stark, Myer, Starzynski and Beers.[2]  In grievance 797347, Plaintiff

---

[1] Link is a clear reference to Defendant Linkowicz. Plaintiff's SUF, Appendix 10, 12:18–13:25.

[2] It is also asserted that this grievance specifically named Marsico and Josefowicz. In the grievance Maye specifically stated that "Morning officer called unt mgr informed him which 'I'm not moving him' was Unt Mgr response per officer." Defendant's SUF, Exhibit 13. This is a reference to Marsico and Josefowicz since they are the unit managers who originally

specifically wrote as follows: (1) "Upon arrival I informed ofcr [sic] Link and Lynch about my medical status, BB/BT Same Level Shower. Link called Medical to confirm status. Medical restriction clearly states I don't walk and down [sic] steps thus the reason Dr. Prince issued pass 3/19/19"; (2) "For two days I was witnessed by staff being on the top Bunk and forced to walk up and down steps including to shower causing pain to my knee and swelling"; (3) Maye provided detailed facts about his fall on March 26, 2019; (4) "Lynch stair [sic] being on top bunk"; (5) Link called Medical to confirm Medical Status (CO is Linkowicz)"; (6) "3-26-2019 moved from J-Blk to F-Blk"; (7) "3-19-19 Dr. Prince issues Shower Pass for same level shower on J-Block. Restriction remain intact which include but not limited to no walking up and down flights of steps"; (8) "3-26-19 moved to F-Blk, CO Link (Linkowicz) calls Medical to confirm Medical Status"; and (9) after the move to F block, "Bottom Bunk 22 cell was occupied the only bunk open was top. I was on top bunk until injury happened. Ofcr Linkowicz, Lynch, Stair and 1st Shift staff all witnessed me on top bunk." Defendants SUF, Exhibit 14. In the response to this grievance, Leah Martin confirmed that Plaintiff had a bottom bunk and bottom tier restriction since at least September 10, 2018 due to his

---

decided to move Maye. However, this argument is ultimately unnecessary given grievance 797319.

epilepsy diagnosis. Response SUF, Appendix 4. Martin further stated that "it is unclear as to why you would have been assigned to an upper bunk in the first place." *Id.* This grievance and response specifically named, at a minimum, Linkowicz, Lynch, and any staff assigned to F-Block for two days after May 26, 2019, which would include Beers and Josefowicz at minimum. Defendants SUF, Exhibit 14. In grievance 797319, Plaintiff specifically wrote as follows: (1) "This is a file of grievance because of a move that Unt Mgr James Marsico made knowing that I have medical (documented) restrictions."; (2) "3-19-19 I was issued a same-level shower pass by Dr. Prince because of a chronic Medical Condition that requires me not to walk up and down steps due to risk of injury. My knee buckles and gives out without warning. Marsico knew of this restrictions [sic] because of prior incidents and called Leah Martin and got it confirmed yet in still [sic] he still chose to ignore medical documentation and protocol, showed blatant disregard for my overall health, deliberate indifference towards my health and other violations by for no reason at all moving me from a medical prescribed block to a block that I have to walk [sic] and down stairs all the time thus knowing and intentionally putting me at risk for serious injury."; and (3) I want to know why I was moved and why was my medical restrictions ignored". Defendants SUF, Exhibit 15. The grievance coordinator then

rejected this grievance since "[t]he issue(s) presented on the attached grievance has been reviewed or is currently being reviewed and addressed. Prior grievance #795772." Response SUF, Appendix 5. This was an admission that grievance 795772 was construed by SCI Dallas to include Marsico and all claims related to Plaintiff being moved from J Block to F Block despite his medical restrictions. Maye then appealed this rejection and specifically stated that grievance 797319 was specifically related to Marsico and Marsico improperly moving him despite his medical restrictions. Response SUF, Appendix 6. In response, the superintendent of SCI Dallas stated "[t]he Grievance Coordinator's decision not to process your grievance is accurate. The issue presented on this grievance was addressed in grievance #795772." Response SUF, Appendix 7. Again, an admission that grievance 795772 included Marsico and all issues related to Maye's move from J Block to F Block despite his medical restrictions. Maye again filed an appeal noting that grievance 797319 was specifically related to Marsico and Marsico's decision to move him to F Block knowing that Maye's medical conditions prevented such a move. Response SUF, Appendix 8. These grievances and responses demonstrate Plaintiff exhausted his administrative remedies and specifically named all Defendants.

47. Denied. The response to ¶ 46 is incorporated fully herein by reference.

48. Denied. The response to ¶ 46 is incorporated fully herein by reference.

49. Denied. The response to ¶ 46 is incorporated fully herein by reference.

50. Admitted.

51. Admitted in part and denied in part. It is admitted that the statement in ¶ 51 is accurate. However, Plaintiff also demanded costs and attorney's fees for each claim in the Complaint (Doc. 1).

52. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

53. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

54. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

55. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

56. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately

indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

57. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

58. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

59. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to

Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

60. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

61. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

62. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible

evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

63. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

64. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

65. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF,

Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

66. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

67. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

68. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

69. Denied. Defendants cite to no authority to support this assertion. By way of further response, all documents attached to Plaintiff's SUF, Defendants SUF, and the Response SUF are competent and admissible evidence. Additionally, as explained in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Defendants were deliberately indifferent to Plaintiff's serious medical needs and denied him prescribed medical treatment.

70. Denied. All medical documentation and the medical department specifically recognized Maye's medical restrictions were in place because he could not use stairs in a safe manner. Response SUF, Appendix 10 (noting that Dr. Prince approved a same level shower pass for Maye on March 19, 2019 and that is why Maye was housed on J Block, with same level showers, at that time); Response SUF, Appendix 11 (noting that the "medical

department staff gave you bottom bunk, bottom tier and same level showers, and this is ***documented in your electronic health record***") (emphasis added); Plaintiff's SUF, Appendices 9, 12–13, 15. The medical department at SCI Dallas acknowledged that Maye had his medical restrictions, including his same level shower pass, because of "his inability to go up and down stairs." Response SUF, Appendix 12 (noting that Maye's medical restrictions and same level shower restriction were issued because of his inability to go up and down stairs); Plaintiff's SUF, Appendix 13 (noting on March 19, 2019 that Maye has trouble with stairs, has bottom bunk and bottom tier status, and Dr. Prince renewed Maye's same level shower pass with the specific instruction to "Shower on ground level on J-Block"); Plaintiff's SUF, Appendix 11, 16:7–18:19. Leah Martin, a member of the medical department at SCI Dallas, confirmed that Maye's same level shower restriction, as well as his other restrictions, were in his medical records and that the person responsible for moving Maye from J Block to F Block would have been aware of these restrictions. Plaintiff's SUF, Appendix 11, 18:8–19:15.

71. Denied. Response SUF, ¶¶ 5, 10–18, 23–40, 52–70; Plaintiff's SUF, ¶¶ 8, 13–18, 22–23.

> Respectfully Submitted,
>
> *s/ Leonard Gryskewicz, Jr.*
> Leonard Gryskewicz, Jr.

Attorney for Plaintiff
PA321467
Lampman Law
2 Public Sq.
Wilkes-Barre, PA 18701
Phone: (570) 371-3737
Fax: (570) 371-3838
Email: lenny@lampmanlaw.com